UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re | : | |
| JEFFREY M. ROWE | : | Chapter 13 |
| Debtor | : | No. 07-40826 |
| | : | |

**MEMORANDUM OF DECISION**

    This matter came before the Court for hearing upon the Motion of Lake Equipment Leasing, Inc. (hereinafter "Lake") for Relief from Stay [Docket #26] and the Opposition of Jeffrey M. Rowe (hereinafter "Debtor") thereto [Docket #29].  At the conclusion of the hearing, the Court offered the parties the opportunity to submit supplemental briefs on the issue, both of whom did so [Docket #60, 62, 64].  Having considered the arguments of counsel at the hearing and in their written submissions, the Court hereby finds that Lake does not have a security interest in the Debtor's 1999 Chevrolet K3500 Truck (hereinafter "Truck") and that Lake leased, not sold, a 1999 Ditchwitch 410 SXD Vibratory Plow (hereinafter "Ditchwitch") to the Debtor and is entitled to relief from stay as to that equipment.

    1. **Truck**

    Under Revised Article 9 of the Uniform Commercial Code (hereinafter "U.C.C."), a security interest is not enforceable unless certain conditions are satisfied, one of which requires the debtor to authenticate a security agreement that provides a description of the collateral.  MASS. GEN. LAWS ch. 106, § 9-203(b)(3)(A) (2001).[1],[2]  Here, there is no evidence that the parties executed a security agreement with respect to the Truck.  However, Lake contends, and the Court agrees, that the absence of a document titled "security agreement" is not fatal to its position.  *See In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir. 1973).  In the

---

[1] The other requirements—that the debtor have rights in the collateral and that value be given—are not in dispute here.  *See* § 9-203(b)(1)-(2).

[2] The former version of Section 9-203, which required the debtor to "sign" the security agreement, was revised to require the debtor to "authenticate" it, which means either by signature on a written document or electronic transmission.  *See* William C. Hillman, DOCUMENTING SECURED TRANSACTIONS § 5.1, p. 5-1 (2d Ed. 2007).  For purposes of this discussion, and the cases cited herein, that is the only difference between the former and revised Section 9-203.

1

First Circuit, as in others, it is not necessary that the debtor have signed a formal security agreement, if there are documents which collectively establish an intention to grant a security interest in the collateral.  *Baystate Drywall, Inc. v. Chicopee Savings Bank*, 429 Mass. 17, 21, 429 N.E.2d 1138, 1141 (1982) (citing *Numeric*, 485 F.2d at 1331).  *See also* William C. Hillman, DOCUMENTING SECURED TRANSACTIONS, § 5.2, p. 5-4, n. 24 (2d Ed. 2007) (citing supporting cases).  "A writing or writings, regardless of label, which adequately describes the collateral, carries the signature of the debtor, and establishes that in fact a security interest was agreed upon would satisfy both the formal requirements of the statute and the policies behind it."  *Numeric*, 485 F.2d at 1331 (considering financing statement and director's resolution).  *See, e.g.*, *In re Bollinger Corp.*, 614 F.2d 924, 926-927 (3d Cir. 1980) (reviewing promissory note, financing statement, and correspondence).  Here, Lake proffers three documents, which it claims collectively establish that the Debtor granted a security interest in the Truck: (1) the equipment lease for the Ditchwitch; (2) the certificate of title for the Truck; and (3) a limited power of attorney [Docket #26, Exhibit A, B, C].  The Court finds otherwise.

None of the three documents contain any language which could be construed as granting a security interest in the Truck.  "[I]n the absence of a 'security agreement' denominated as such, some language reflecting a desire to *grant* a security interest must be contained within the documents offered to establish a security agreement under [Section] 9-203."  *In re Modafferi*, 45 B.R. 370, 372 (S.D.N.Y. 1985) (emphasis in original).  The equipment lease (hereinafter "Lease") [3] mentions the Truck only once and not within the section discussing its terms, but rather in its schedule:

| Description of Equipment: | Used 1999 Ditchwitch 410 SXD Vibratory Plow with 1999 Digging Attachment, As Collateral: 1999 Chevy K3500 Truck |
|---|---|
| Serial Number(s): | 450566/ Collateral Vin #1GBJK34F8XF058013 |

Other than the reference to the Truck as "collateral," there is no mention of the Truck anywhere in the Lease nor is there any mention of the Debtor granting a security interest in

---

[3] The Lease was executed in New Jersey, but did not include a choice of law provision requiring the agreement to be construed under the laws of that state.  In any event, the New Jersey version of Section 9-203 is identical to the Massachusetts one with the exception of an additional subparagraph (j), which is not relevant here.  *See* N.J. STAT. ANN. § 12A:9-203 (West 2007).

2

it to Lake. Even where a document lists something as "collateral," as Lake points out the Lease does here, there must be some granting language to find that the creditor holds a security interest in it. *See Modafferi*, 45 B.R. at 372. As stated by the court in *Modafferi*,

> An examination of the evidence in this case reveals no written expression by the debtor granting a security interest. The financing statement presented by [the creditor], signed by one of the debtors, merely lists the covered collateral; it contains no "granting" language and therefore fails to demonstrate a present intent to pledge the collateral. Notwithstanding the policy expressed by the drafters of the U.C.C that its terms be construed liberally, *see* [Section] 1-102(1), this court is constrained to find that the debtor did not grant a security interest to [the creditor] based on the evidence presented. The goal of liberal construction does not dispense with the requirements of…[Section] 9-203…. '[I]t is not the security agreements that are to be liberally construed, it is the act.'

*Id.* at 373.

The other two documents proffered by Lake—the certificate of title (hereinafter "Title") and limited power of attorney—likewise do not include any granting language.[4] Although Lake is listed as the "First Lienholder" on the Title, that is insufficient to find the granting of a security interest just as listing the Truck as "collateral" on the Lease is insufficient. "[A] security interest in a motor vehicle cannot be created just by completing the process prescribed by a "certificate of title" statute, nor does reference to a lien stated on a title certificate alone constitute a security agreement." *Baystate Drywall,* 429 Mass. at 22, 429 N.E.2d at 1142. As to the last document, the limited power of attorney makes no reference to the Debtor granting Lake a security interest in the Truck; it merely authorizes Frank's Far Rockaway Auto School, Inc. "to sign all papers and documents that may be necessary in order to secure motor vehicle title and/or registration for the following described vehicle…1999…Chevy… K3500 Truck." Although this clause is open to interpretation, it cannot reasonably be construed as having the requisite "granting" language for Lake to hold a security interest in the Truck. The limited power of attorney gave Frank's the power to sign documents to "secure" motor vehicle title for the Truck—whether "secure" means "obtain" or something else is an entirely different question, one that the Court need not reach as neither party has requested an evidentiary hearing and the Court is confined to the record before it. Thus, because there is no granting language within the Lease, Title, or

---

[4] The Court questions whether it should even consider these other two documents given that the Lease contains a standard integration clause at paragraph 16(b), which states that the Lease constitutes the entire agreement between the parties, an issue which was not raised or apparently relevant in *Numeric* or other previously cited cases.

3

limited power of attorney stating that the Debtor "hereby grants to Lake a security interest in the Truck," the Court finds that Lake does not hold a security interest in it and is not entitled to relief from stay.

### 2. Ditchwitch

As to the Ditchwitch, the parties dispute which of them is its rightful owner. Lake argues that it leased the Ditchwitch to the Debtor whereas the Debtor argues that Lake sold it to him under an installment contract, but then failed to perfect its security interest in it by misnaming the Debtor on the U.C.C. financing statement. Thus, the Court must determine whether the document titled "equipment lease" is a true lease or rather is a disguised installment sales contract, and second, if the Court finds in the latter, must determine whether Lake properly perfected its security interest in the Ditchwitch.

Under the U.C.C., courts may construe a document as a security agreement or installment contract in substance even if a "lease" in form. *See* MASS. GEN. LAWS. ch. 106, § 1-201(37) (1998). Section 1-207(37) provides:

> whether a transaction creates a lease or "security interest" is determined by the facts of each case; however, a transaction creates a "security interest" if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and:
> (a) the original term of the lease is equal to or greater than the remaining economic life of the goods,
> (b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,
> (c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or
> (d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.
>
> A transaction does not create a "security interest" because it provides that:
> (a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or greater than the fair market value of the goods at the time the lease is entered into,
> (b) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods,
> (c) the lessee has an option to renew the lease or to become the owner of the goods,
> (d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the

> goods for the term of the renewal at the time the option is to be performed, or
> (e) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.
>
> § 1-207(37).

In determining the true nature of a document under Section 1-201(37), courts consider numerous factors including:

> (1) whether there was an option to purchase for a nominal sum, (2) whether there was a provision in the lease granting the lessee an equity or property interest in the equipment, (3) whether the nature of the lessor's business was to act as a financing agency, (4) whether the lessee paid a sales tax incident to acquisition of the equipment, (5) whether the lessee paid all other taxes incident to ownership of the equipment, (6) whether the lessee was responsible for comprehensive insurance on the equipment, (7) whether the lessee was required to pay any and all license fees for operation of the equipment, and to maintain the equipment at his expense, (8) whether the agreement placed the entire risk of loss upon the lessee, (9) whether the agreement included a clause permitting the lessor to accelerate the payment of rent upon default of the lessee and granted remedies similar to those of a mortgagee, (10) whether the equipment subject to the agreement was selected by the lessee and purchased by the lessor for this specific lessee, (11) whether the lessee was required to pay a substantial security deposit in order to obtain the equipment, (12) whether the agreement required the lessee to join the lessor, or permit the lessor by himself, to execute a UCC financing statement, (13) whether there was a default provision in the lease inordinately favorable to the lessor, (14) whether there was a provision in the lease for liquidated damages, (15) whether there was a provision disclaiming warranties of fitness and/or merchantability on the part of the lessor [and], (16) whether the aggregate rentals approximate the value or purchase price of the equipment.

*See In re Mariner Commc'ns, Inc.*, 76 B.R. 242, 245 (Bankr. D. Mass. 1987).

Although not definitive, the first of these factors—the presence of an option to purchase—is given great weight in finding a security agreement. *See id.*

Based on the language of Section 1-201(37) and the factors set forth above, the Court finds that the document titled "equipment lease"[5] is in fact a true lease and not an installment sales contract. Under the first part of Section 1-201(37), the court must determine whether the lessee's obligation to pay for the right to possession and use of the equipment is for the entire lease term and is not subject to termination. Here, that threshold

---

[5] From here on forward, the Court will return to referring to the equipment lease as "Lease" and will cite to provisions therein as "Paragraph #."

5

requirement is satisfied as the Debtor cannot terminate the agreement without incurring an obligation to pay all of the rent due therein. *See* Paragraph 2. *See also In re Fox*, 229 B.R. 160, 165 (Bankr. N.D. Ohio 1998). However, the Court must next find that one of four conditions in the second part of § 1-201(37) is also satisfied. Here, based on the record before the Court, none of those four conditions are present. First, there was no evidence as to the remaining economic life of the Ditchwitch at the expiration of the original Lease term. Second, the Lease does not require the Debtor to renew the Lease. Third, although the Debtor does have the option to renew the Lease at the end of its 60-month term for successive terms of one year, the monthly payments would continue at the contract rate of $626.69, which certainly cannot be deemed "no additional or nominal consideration." *See* Paragraph 17. Fourth, and most important to the Court's analysis, the Lease does not include an option to purchase the Ditchwitch; upon expiration or termination of the agreement, the Debtor must return the equipment to Lake. *See* Paragraph 9. As further support, although the Debtor is responsible for insurance, maintenance, taxes, and other fees—factors 5, 6 and 7—(*See* Paragraphs 4, 5), bears the risk of loss—factor 8—(*See* Paragraph 6), and selected the equipment—factor 10—(*See* Paragraph 3(a)) and Lake recorded a U.C.C. financing statement—factor 12—(*See* Paragraph 16(f)), included a liquidated damages clause—factor 14—(*See* Paragraph 12(e)), and disclaimed all warranties—factor 15—(*See* Paragraph 7), there was insufficient, or no, support on factors 1, 2, 3, 4, 9, 11, 13, 16 for the Court to find an installment sales contract.

Even if the Court were to deem the "equipment lease" an installment sales contract, Lake did not necessarily perfect its security interest in the Ditchwitch with respect to the world, though the filing might be sufficient as against the Debtor. Lake filed a U.C.C. financing statement [Docket #29, Exhibit A], but the Debtor argues that the filing is invalid because the financing statement read "Ace Landscaping & Irrigation, Inc." instead of the Debtor's proper trade name of "Ace Landscaping, Inc." The Court would not need to determine whether the difference in these two names renders the financing statement seriously misleading because, under the U.C.C., a financing statement that provides only the debtor's trade name is insufficient anyway. *See* MASS. GEN. LAWS. ch. 106, § 9-503(c), § 9-506(b) (2001). *See also* William C. Hillman, DOCUMENTING SECURED TRANSACTIONS, § 9.3.2[C], p. 9-15 (2d Ed. 2007). So even if the Debtor did business as "Ace Landscaping & Irrigation, Inc.", it would still be defective under Section 9-503(c) because it fails to include

6

the Debtor's own name, Jeffrey Rowe, particularly where the trade name is dissimilar to the person's actual name (i.e. not "Jeffrey Rowe Landscaping, Inc.,"). *See* Hillman, at p. 9-15. However, "[i]n a two-party dispute, it is not inappropriate to use estoppel to save a trade name filing" and thus the Court would be inclined to find Lake's financing statement valid *here* because it is the Debtor, and not a third party or bankruptcy trustee, challenging the sufficiency of the filing, particularly where the Debtor signed two other documents (i.e. Lease and limited power of attorney) that had the wrong d/b/a name. *Id.* at p. 9-18 (citing *Peoples Nat'l Bankr v. Uhlenhake*, 712 P.2d 75 (Okla. Ct. App. 1985)).

### 3. Conclusion

The Court finds that Lake does not hold a security interest in the Debtor's Truck, and thus the motion for relief is DENIED as to the Truck. The Court finds that Lake leased the Ditchwitch to the Debtor, and as the Debtor is in default of his lease payments as set for in the pleadings, the motion for relief is GRANTED as to the Ditchwitch.

A separate order shall issue.

Dated: June 11, 2007                    By the Court,

*Joel B. Rosenthal*

_____

Joel B. Rosenthal
United States Bankruptcy Judge